Harris versus Kijakazi. Good morning, may it please the court. My name is Eitan Kaslyanich and I'm representing Carolyn Harris in this appeal. Carolyn Harris is unable to work due to the combined functional effects of her many impairments, the main ones being bipolar disorder and anxiety disorder, but she's also got a very serious case of fibromyalgia and chronic pain syndrome, she has migraines, degenerative disease, osteoarthritis, she has a lot of problems. The main legal issue in this case is that the ALJ improperly rejected the medical opinion of Harris's treating physician, Dr. Klein. The ALJ did not state any convincing or even legitimate reason for rejecting this opinion. Now, Dr. Klein actually gave several opinions, the earliest one in this appears to be in August of 2016. He also had a more detailed evaluation in January 2017 and another opinion in December of 2017. All three of these opinions support a limitation to no more than sedentary work and a limitation to sedentary work in this case requires a finding of disability. And Ms. Harris has been over 50 years of age throughout the entire relevant period. So that's the biggest error. The ALJ also improperly rejected Ms. Harris's testimony about her limitations and did not state any convincing reason for rejecting any of her opinions. One other thing, this is picking up on the last argument, which is there's an issue I think in this case as well regarding onset date. I was not the attorney at Ms. Harris's hearing. She is alleging an onset date of July 1st of 2015. I think that date's based on the fact that as of And it appears to be based on an assumption that that was also true as far back as July of 2015. But that's the record as we have it here. She is still alleging an onset date of July of 2015. I'm not, if the court doesn't have any questions, I'm going to reserve my time for rebuttal. I think this case should be remanded for the award of benefits or any alternative. It should be remanded for a new hearing based on the ALJ's improper rejection of Dr. Klein's opinion. All right, thank you. May it please the courts, my name is Katherine Watson for the Commissioner. So the main issue in this case is whether the ALJ's evaluation of Harris's subjective complaints and also Dr. Klein's opinion was supported by substantial evidence, which is defined as more than a mere scintilla of evidence. And because the ALJ's reasoning satisfied that standard, we're asking this court to affirm. First, the ALJ cited a number of inconsistencies between Harris's allegations on the one hand and the medical record on the other. For example, Harris alleged debilitating migraines four to five times a week, yet she acknowledged that she only took over-the-counter pain medications for this alleged condition. She did not complain much to treatment providers about migraines, and in fact, she frequently denied migraines altogether in treatment notes. Harris also alleged that she had an unsteady gait and that she generally tried to use a cane when she went outside. The record shows the opposite. The physical examinations typically show a normal steady gait and without the use of an assistive device. Along related lines, Harris alleged that she was prescribed a cane. There is no indication in the record that she was prescribed a cane by any provider. In addition to discussing inconsistencies between Harris's allegations and the medical record, the ALJ also discussed inconsistencies between her allegations and her activities. For example, Harris alleged with appointments. The record shows otherwise. The record shows that she regularly went out to shop in stores. She attended church services. She frequented restaurants at times, and earlier in the relevant period, she went to casinos. Harris alleged that she was unable to stick to tasks due to severe concentration deficits. However, she testified at the hearing, and the ALJ reasonably therefore inferred that she maintained sufficient concentration, and this is according to her testimony, and I'll quote it, to be quite involved in researching dogs and also training dogs with her son. Let me interrupt you. I apologize for doing that, but I want you to focus specifically on the fibromyalgia that she was being treated for because that's not something that can really be It's really, that's the, according to her testimony, that's the primary source of her limitation, and I don't see any specific discussions that accounts for this particular condition in the ALJ's analysis. Can you address that? Yes, so first of all, the ALJ did find fibromyalgia was one of her main conditions, but she also said it was unclear. She had a difficult time differentiating fibromyalgia from her other back impairment, her degenerative disc disease, so from her back and neck pain. Now, the ALJ did initially discuss the medical evidence, as he is required to do under the regulations when evaluating impairments, and the objective evidence would be relevant to the degenerative disc disease, the osteoarthritis. However, on page 26 and page 27, the ALJ identified clear discrepancies between the record and her allegations, which I've discussed, I've just discussed. These discrepancies are going to apply regardless of whether the cause of these limitations is fibromyalgia or her degenerative disc disease. So, as mentioned early, for example, she's alleging unsteady gait, regardless of it is degenerative disc disease, osteoarthritis, or fibromyalgia that causes that alleged unsteady gait, the fact that physical examinations show the opposite, a steady gait, is in and of itself sufficient to discount those allegations. And so, given the clear discrepancies, the clear contradictions between the record and what she alleged, this court can affirm the ALJ's evaluation of her subjective complaints on those grounds, because that reason standing alone would apply regardless of the cause of those limitations. Turning to the ALJ's evaluation of Dr. Klein's opinion, Dr. Klein alleged essentially the same limitations as those alleged by Harris, and the ALJ rejected his opinion for largely similar reasons. The ALJ identified inconsistencies between his statements on the one hand, and then the medical evidence, as well as Harris's activities on the other. So, Dr. Klein similarly alleged fairly extreme limitations. He indicated that Harris was unable to stand. Again, the record documents the opposite. It shows she was able to walk and thereby stand, and do so with a generally normal and steady gait. He indicated that she could walk even a half block. However, there's no indication that he prescribed her a cane, or for that matter, that any provider prescribed her a cane. He stated he opines that she was unable to maintain socially appropriate behavior. Mental status examinations show otherwise. In fact, they consistently document cooperative behavior, even when she was complaining of a lot of pain. He also opined that Harris was unable to maintain regular attendance or be punctual. The record shows she was able to maintain attendance, and she was able to be punctual. In fact, treatment records for group appointments for her substance abuse indicated that she generally presented on time to those appointments on all but one occasion. In addition, he opined that Harris was unable, not simply had difficulty, but completely unable to sustain concentration. And similar to the ALJ's rejection of Harris's subjective complaints, the ALJ also noted here that Harris was involved in activities such as reading, as well as the ability to research and train dogs, in which she indicated she was quite involved in doing this, that would have involved some degree of concentration. The ALJ here accounted for a number of Harris's limitations. He identified a number of severe physical and mental impairments, and he accounted for those in the RFC, but the ALJ provided substantial evidence, or more than a mere scintilla of evidence, to reject the extreme limitations alleged by both Harris and also her treating doctor, Dr. Klein. And I quickly note, in opening brief, there was a number of, there was a lot of evidence discussed in the opening brief about the documentation of limitations. So, for example, Ms. Backelman in the opening brief was referenced, and there are two occasions where she does document a number of remarkable mental findings. I would note her subsequent mental status examinations are simply a box, checking off no significant change in mental status, but the narrative portion of her treatment notes does indicate some change, and I'll just give one example of that, which is on CAR 714, where Ms. Backelman indicates that Harris's PHQ-9 scores went from, which is her depression rating, went from a 22 to a 12. But more pertinently, the ALJ here did discuss both remarkable and unremarkable findings, subjective findings in the record, but he found that the evidence as a whole did not support Harris's extreme allegations or Dr. Klein's opinion. And if there are no other questions, I would simply note that because substantial evidence, or more than a mere scintilla of evidence, supports these All right. Thank you, counsel. Thank you. So, I want to first address the issue of bipolar disorder. It's well established both in this record and through numerous decisions from this court. Bipolar disorder is a mental impairment that by definition involves waxing and waning of symptoms. It involves, it can involve manic periods and depressed periods. And so, the fact that there are some normal findings in the record says nothing about the overall severity of her bipolar disorder. In my opening brief, I discussed some of the findings from other providers in which they observed Harris's numerous symptoms, including things like pressured speech and tangential thought. That sort of is a thread that runs through the entire file. And so, when her bipolar disorder is particularly bad, she's completely out of control. She can't even, you know, pressured speech and tangential thought are things that would prevent a person from performing any type of work. And with regard to Dr. Klein's opinion, his opinion is supported by all of these mental health findings throughout the record. It's consistent with all of those mental health findings throughout the record. And it's consistent with his clinical observations. Now, Dr. Klein also opined about the level of physical limitations that Harris was experiencing. And one of the things he noted was, basically, she had pain everywhere. And this is, once again, a standard finding with fibromyalgia, a person can have widespread pain. And that was the reason that is related to her use of a cane, the unsteady gait, or is that due to some other physical condition? Well, she had back surgery prior to this entire time period and had recovered from it. But it was sort of recurring. It was recurrent degenerative disc disease related to that. And so, I mean, as far as like, when was the cane prescribed? I don't think that's even an issue here. It may have been prescribed back when she had her back surgery. She has a cane, she uses a cane, and her treating physician says she needs to use it. So, but back to your question, it's the fibromyalgia. You can't separate things out. It's one person here. But she has fibromyalgia, she has a serious degenerative disc disease. And the combination of these things were preventing her from being on her feet for long periods of time. The policy council mentions there's one place where Dr. Klein does go too far. And he says she couldn't stand or she couldn't walk or something. But in his general, his like more detailed opinion, he mentions that she could stand or walk up to two hours in an eight hour day. I think the real issue here is an inability to stand and walk for the six hours per day that are the minimum generally required for light work. She could not perform light work due to her inability to be on her feet for that long due to needing a cane and due to the fibromyalgia pain. With regard to her testimony about her limitations, none of the ALJ's reasons, I mean, over the course of years, yes, I know there's one reference in the file to her going to a casino. There's not ongoing activities that contradict her testimony about her inability to be on her feet for much time at all. Nor is there evidence that she from her activities that contradicts her overall limited functioning. This is not a person who's out there and doing lots of things. She's not. With regard to the doc, back and jumping back once again to Dr. Klein's opinion, why this is so important. This is the only medical opinions. These are the only medical opinions in this file from anyone who actually treated her. And, in fact, there's not even opinions from examining physicians that contradict this. The only thing that contradicts it, arguably, are opinions from non-examining state agency physicians who reviewed the file at one point in time back in, I believe, 2017. And those opinions, there's a reason why it's longstanding precedent in the Ninth Circuit throughout the country, that the opinions of treating physicians deserve deference, and they're entitled to more weight than the opinions of people who have never met her, examined her, or even listened to her testimony or anything. They only have looked at a paper file and filled out a form. So, in conclusion, I think the issue here, once again, does boil down to the ALJ's improper rejection of Dr. Klein's three opinions and his improper rejection of her testimony. Her testimony about her limitations is consistent with her impairments, and it would prevent her physically from performing any type of work beyond sedentary work. And her testimony also shows that mentally, she would be unable to sustain competitive employment for a full-time basis due to her symptoms worsening regularly and having symptoms like pressured speech and tangential thought that simply are not amenable to a competitive work environment. If you don't have any more questions for me, I ask that you affirm, excuse me, that you reverse the ALJ's decision and either award benefits here or remand the case for a new hearing. Thank you. All right. Thank you very much. The matter is submitted.
judges: PAEZ, NGUYEN, Tunheim